[No. 8025.   Department Two.   January 8, 1910.]

# W. E. Moses Land Scrip and Realty Company, *Appellant*, v. Stack-Gibbs Lumber Company, *Respondent*.[1]

Sales—Breach—Damages—Action by Vendor—Evidence—Sufficiency. The evidence is sufficient, as against a motion for nonsuit, to sustain an action for breach of a contract to sell land scrip, where the officers of the defendant corporation introduced the plaintiff's representative to one R. as its agent and representative for the purchase of scrip, that after negotiations, R. made a definite offer for scrip at a stated price, which was tendered to the defendant, and was satisfactory to the defendant's secretary, who asked that the scrip be held pending a telegram for funds, that defendant failed to secure funds and refused to complete the sale, and that the scrip cost plaintiff $100,000 and plaintiff had been damaged in the sum of $50,000.

Corporations—Contracts—Representation—Authority of Officers and Agents. A corporation is bound by a contract for the purchase of land scrip where it was interested in that business and placed its vice president and secretary in sole charge of its head office with apparent authority to deal in scrip, and they designated an agent as the corporation's agent with authority to represent it in the purchase of scrip, and did not promptly disavow a contract made by the agent.

Frauds, Statute of—Pleading. The defense that a contract is void under the statute of frauds for want of sufficient memorandum must be specially pleaded.

Same—Memorandum of Sale—Sufficiency. A signed offer for five thousand acres of "Northern Pacific Scrip," under a specified act of Congress, the price to be "fifteen dollars per acre net to you," is a sufficient memorandum of the sale of goods, wares and merchandise to take the same out of the operation of the statute of frauds, although it fixes no time for tender and payment, as a reasonable time would be presumed to be contemplated.

Evidence—To Vary Writing—Admissibility. Oral evidence to define and explain the term "Northern Pacific Scrip," issued under a specified act of Congress, does not vary the terms of a written contract for the sale thereof.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered February 29, 1908, grant-

[1]Reported in 106 Pac. 207.

ing a nonsuit, after a trial before the court without a jury, in an action on contract. Reversed.

*Peacock & Ludden*, for appellant.

*C. S. Voorhees* and *Reese H. Voorhees*, for respondent.

CROW, J.—This action was commenced by the W. E. Moses Land Scrip and Realty Company, a corporation, against Stack-Gibbs Lumber Company, a corporation, to recover damages for the breach of a contract to purchase land scrip. At the close of plaintiff's evidence, a nonsuit and judgment of dismissal were entered, and it has appealed.

The only question before us is whether the nonsuit should have been granted. The evidence shows that, on or about September 15, 1906, one D. B. Jones, appellant's agent, called at respondent's office, in the city of Spokane, to sell it land scrip; that he then found in charge C. D. Gibbs and R. B. Stack, vice president and secretary of the respondent company; that a conversation then took place, to which Mr. Jones, in part, testified as follows:

"Q. What did you say to Mr. Gibbs, and what was his response? A. I told Mr. Gibbs that our company was in the business of selling land scrip, and that I had understood from their correspondence—information that we had received from them, that they were interested in purchasing land scrip. He responded that they were. They were interested in that matter and that he was just going down to the office of their representative who looked after their scrip locations, and he would be very glad if I would go with him and meet their representative, Mr. Rahn. I told him that I would go with him, and he took me to the office of Mr. A. A. D. Rahn, in the Hyde Block, to whom he introduced me as representing the W. E. Moses Land, Scrip & Realty Company, of Denver, and introduced Mr. Rahn to me as the gentleman who was handling the location of scrip timber lands for their company. Q. Did he say anything about Mr. Rahn's being also the agent, or representative, for the purchase of scrip for them? A. Yes, sir. . . . Q. What did he say? A. He said that Mr. Rahn was looking after the purchase of scrip for their

company, and that he wanted me to talk with Mr. Rahn regarding scrip";

that after considerable negotiation, Mr. Rahn executed and delivered to Mr. Jones the following written order:

"Rooms 522-523 Hyde Bldg., Spokane, Wash., Sept. 15, 1906.

"The W. E. Moses Land Scrip and Realty Co., Denver, Colo.

"Gentlemen: I hereby confirm my verbal order placed with your Mr. Ben B. Jones today for five thousand acres of Northern Pacific Scrip for location upon unsurveyed lands in the state of Idaho, scrip to be that of the Act of July 1st, 1898, and the price to be paid to you therefor fifteen dollars per acre net to you. Yours very truly, A. A. D. Rahn.

"P. S. I will accept any portion of five thousand acres of the above named scrip at the same price, and will also accept any amount of the same scrip up to ten thousand acres at the same price. A. A. D. Rahn";

that on September 28, 1906, appellant tendered to respondent, at its office in Spokane, Northern Pacific scrip for ten thousand acres, properly assigned, and demanded the agreed purchase price; that secretary Stack, then in charge, said the company wanted the scrip, but that Mr. Rahn was out of the city looking over timber lands in Idaho upon which to locate the scrip, and could not be reached; that the funds for making payment were subject to Mr. Rahn's order, but that he—Stack—would telegraph east for authority to make a draft for the money; that Stack requested the scrip to be held until about October 2 until he could procure funds; that he arranged with the Exchange National Bank for having his draft cashed on telegraphic orders from the east; that he did telegraph for funds; that he finally received instructions not to make the payment or accept the scrip; that the scrip was costing appellant $100.000, and that appellant had been damaged in the sum of $50,000. This evidence was sufficient as against a motion for nonsuit.

Respondent, in support of the final judgment, contends that there was a failure to establish any corporate action on the part of the respondent to show any authority of its

officers, or to show that Rahn was its authorized agent, and that, in any event, vice president Gibbs could not delegate his authority to Rahn. Respondent continuously and vigorously objected to each and every offer of evidence made by appellant to show the negotiations with Jones, or the acts, statements, or admissions of Gibbs, Stack, and Rahn, insisting that their authority to bind respondent had not been proven. On many of these objections the trial court ruled with much strictness against the appellant, but sufficient evidence was admitted to fix respondent's liability, in the absence of any evidence in its behalf. It appeared that Gibbs, as vice president, and Stack, as secretary, were in sole charge of respondent's office or headquarters in the city of Spokane; that appellant had received a letter from secretary Stack, making inquiry about land scrip; that later, when Jones called, respondent's vice president and secretary conferred with him in regard to such scrip; that the vice president informed him that Rahn was respondent's authorized agent for purchasing land scrip; that Rahn dealt with Jones for and on behalf of respondent, and that when promptly advised of the order given by Rahn, the respondent took no exception thereto, but through its secretary voiced its approval. Appellant introduced certified copies of written contracts between respondent and third parties for the purchase of timber in the state of Idaho, which contracts had been executed on respondent's behalf by Stack as its secretary.

It manifestly appears that Gibbs and Stack were held out by respondent as its officers and agents, having charge of its offices and business in Spokane, with apparent authority to deal with appellant, and that through them it also designated Rahn as its agent, with authority to represent it in the matter of purchasing land scrip. This court has repeatedly held that, where a corporation permits certain officers or agents to manage its business affairs, or holds them out as having authority, it is responsible for-

their acts within the apparent scope of such business and authority, unless it affirmatively shows such acts to have been unauthorized. *Carrigan v. Port Crescent Imp. Co.,* 6 Wash. 590, 34 Pac. 148; *Saunders v. United States Marble Co.,* 25 Wash. 475, 65 Pac. 782; *Anderson v. Wallace Lumber & Mfg. Co.,* 30 Wash. 147, 70 Pac. 247; *Chilcott v. Washington State Colonization Co.,* 45 Wash. 148, 88 Pac. 113; *McKinley v. Mineral Hill Consolidated Min. Co.,* 46 Wash. 162, 89 Pac. 495.

Corporations necessarily act through officers and agents, and in these busy times, when the great bulk of the transactions of the commercial world is carried on by them, parties with whom they deal do not always find it convenient, practicable, or possible to ascertain from the corporation records what the exact authority of such agents may be, in advance of each and every business negotiation. The public, therefore, deals with those individuals who, in apparent authority, conduct and have charge of the offices and other places of business maintained by such corporations, and who are thus held out as their authorized agents. Although it is elementary that an officer or agent of a corporation can act only within the scope of his authority for the purpose of binding his principal, yet under the circumstances disclosed by the evidence now before us, ordinary justice demands that want of authority in the alleged officers and agents of the respondent must be affirmatively shown by it to overcome the case made by the appellant. There is nothing in the evidence indicating that respondent's vice president has attempted to delegate any of his authority to Rahn. On the contrary, he simply introduced Rahn to appellant's agent as the party to whom respondent had already delegated power to represent it in purchasing scrip. After being so introduced, Rahn dealt with appellant for and on behalf of respondent, and not in any personal capacity. Although he signed the order in his own name, all of the interested

parties at the time knew that he was acting for his principal, the respondent.

Respondent further contends that the written order is not such a memorandum as sufficiently complies with the statute of frauds to support appellant's action; that a contract for a sale of scrip for more than $50 is within the statute of frauds (Bal. Code, § 4577), being for a sale of "goods, wares, or merchandise"; that the written contract is insufficient as it is shown by the proof to rest partly in writing and partly in parol; that it is insufficient because its subject-matter, "Northern Pacific Scrip," is not described, defined, or identified in the writing itself, and that it is void because it fixes no time of performance or payment which should be a part of its essential terms. The respondent's answer consisted of denials only. It did not plead any defense based upon the statute of frauds, nor does the record affirmatively show that any such defense was urged upon the trial. The principal contention then made was that the persons who assumed to act for the respondent were not shown to have acted with authority. The general rule of pleading has been thus stated:

"While there is no little conflict of opinion regarding the proper mode of taking advantage of the statute of frauds, it may be laid down as a sound and generally accepted rule, with certain exceptions in some jurisdictions, to be noticed hereafter, that, unless it appears otherwise that the contract declared on is obnoxious to the statute, the party seeking its protection must especially insist on it in its pleadings. The reason for this rule is obvious. A parol agreement is neither illegal nor void under the law. The statute of frauds requiring the contract to be in writing is simply a weapon of defense which the party entitled may or may not use for his protection. If he does not specially by plea or answer set it up and rely upon it as a defense he cannot afterwards avail himself of its benefits. Thus it has been held that the defense could not be raised for the first time at the hearing, nor in an instruction; and it is generally held not to be an available defense in an appellate court, unless first set up in the court below." 9 Ency. Plead. & Prac. 705.

As there must be a new trial and the respondent may wish to amend its answer, we will suggest that, in our opinion, none of the contentions above mentioned can be sustained upon the record now before us. An examination of the written order shows that it is sufficiently definite to comply with the requirements of the statute. It is true that the time of payment is not fixed by its terms, that appellant's agent Jones testified he was to make the tender and receive payment on or before October 1, 1906, and that respondent objected to such evidence, for the reason that it tended to change, vary, or add to, the terms of the written contract. The memorandum, however, in the absence of any such evidence, would readily be construed as contemplating payment within a reasonable time. There is no contention that the time within which appellant did make the tender and demand payment was unreasonable. Evidence was offered to define and explain the term "Northern Pacific Scrip," and such evidence, although objected to, was admissible. It did not tend to change, vary, add to, or contradict the written agreement, but simply explained the technical meaning of its terms, which is permissible. On the evidence admitted, the motion for a nonsuit should have been denied.

The judgment is therefore reversed, and the cause remanded for a new trial.

Rudkin, C. J., Mount, Dunbar, and Parker, JJ., concur.