[No. 13566. Department Two. March 16, 1917.]

D. ANDREOPULOS *et al.*, *Appellants*, v. COSTAS PERESTEREDES, *Respondent*.[1]

JUDGMENT—CONCLUSIVENESS—RES ADJUDICATA. A judgment in an action brought by a partner for an accounting, in which a counterclaim was pleaded, is not *res adjudicata* or a bar to a judgment on the same counterclaim in a prior action already pending between the same parties, where the pendency of such prior action might have been pleaded in abatement and it was shown that the counterclaim was not adjudicated in the last action which first went to judgment.

· PARTNERSHIP—ACTIONS BETWEEN PARTNERS — DAMAGES — FUTURE PROFITS—EVIDENCE—SUFFICIENCY. In the absence of any evidence of profits in the past, the evidence is too speculative and uncertain to warrant recovery of damages for loss of future profits from a partnership agreement for the manufacture of cigarettes, where defendants merely testified that the stock on hand was worth $7,500, that $1,000 worth of stock would bring a profit of $700, that the cigarettes cost from $4.26 to $4.50 per thousand, and they sold at $12,

[1]Reported in 163 Pac. 770.

$15, and $25 per thousand; the estimate of $700 profits being merely an opinion subject to contingencies.

SAME—PARTNERS—ACCOUNTING—EXPENDITURES.   In an action for an accounting between partners, one partner may recover on counterclaim for actual disbursements made for the firm which were never repaid to him.

APPEAL—REVIEW—FINDINGS.   A verdict upon conflicting evidence, properly submitted, is conclusive on appeal.

Appeal from a judgment of the superior court for King county, Jurey, J., entered November 29, 1915, upon the verdict of a jury rendered in favor of the defendant, in an action for an injunction and for the dissolution of a partnership. Reversed.

*Fred J. Carver* and *Frank A. Paul*, for appellants.

*John T. Casey* and *M. E. Sheldon*, for respondent.

HOLCOMB, J.—This is an appeal from a judgment entered on a verdict awarding respondent $1,000 damages on account of his alleged wrongful ejectment from the position of manager of the Grecian Tobacco Company by appellants, Andreopulos and Fertakis, and one Margousis.

The following must be considered as the facts, so far as this appeal is concerned, because of the jury's verdict, even though as to some of them the evidence is conflicting: In the spring of 1914, Andreopulos, Fertakis, and Margousis conceived the idea of forming an establishment to manufacture and sell cigarettes. No great effort was made to get the new adventure under way until September of the same year, when Margousis sent to Montreal for an expert cigarette maker, and respondent, being recommended as such, came to Seattle in response to their summons. On September 5th, respondent started to work at the establishment of the Grecian Tobacco Company on a salary, and a little later it was decided that all four should be partners in the business, and a partnership agreement was drawn up to that effect and signed by all the parties to this action. Each partner was

to subscribe $500 to the capital of the concern and to receive one-fourth of the profits. Respondent was made manager, and Margousis was to have charge of the selling department. There was also in the agreement a written interlineation that, if the work of respondent did not prove satisfactory to a majority of the partners, he could be removed from such position.

Respondent testified that this written interlineation was not in the agreement at the time he signed it, and his version was accepted by the jury as evidenced by their verdict. On October 19, 1914, the other three parties became dissatisfied with the managerial ability displayed by respondent and notified him that his services would no longer be required. Fearing some violence on the part of respondent, Andreopulos, Fertakis and Margousis commenced the present action to restrain respondent from in any way interfering with the business and for a dissolution of the partnership. Respondent answered and, by way of counterclaim, asked for damages in the sum of $5,000 that he would have made as profits in the business if he had not been wrongfully ousted therefrom by the other three partners. At the trial, Andreopulos, Fertakis, and Margousis evidently abandoned their cause of action, and the evidence was directed entirely to the issues framed by respondent's counterclaim, with the result as stated above. Andreopulos and Fertakis alone appealed therefrom.

After the attempted removal of respondent, and after the commencement of this action, dissension broke out in the ranks of the three remaining partners, and Margousis brought an action in the superior court of King county, Washington, for the purpose of recovering some salary claimed to be due him, and also asking for the appointment of a receiver, and making as parties defendant respondent, Andreopulos, and Fertakis. By way of an answer, respondent set up the very same counterclaim sought to be established in this action, and as that case was prosecuted to judgment, appellants—Andreopulos and Fertakis—claim that

that case is *res adjudicata* so far as respondent's counterclaim in the instant action is concerned.

As the Margousis suit was started after the present action, a plea in abatement could have been interposed to respondent's counterclaim, in that action, as such a counterclaim was already pending in a prior action, and it could not have been interposed to his counterclaim in the instant case, as this was the first case instituted; and since it was not pleaded to his counterclaim in the Margousis action, and it is shown by the judgment that such counterclaim was not adjudicated in the Margousis case, we think the doctrine that all things adjudicated in a prior action and all things that might have been adjudicated under the pleadings are *res adjudicata* in a subsequent action, does not apply here. Appellants' contention, therefore, cannot be sustained.

It is also urged by appellants that the jury should not have been allowed to consider the future profits of the Grecian Tobacco Company as an element of damage, because the evidence tending to establish such profits was too speculative and uncertain. It is no longer a disputed question that there is nothing in the nature of future profits *per se* which would prevent their allowance; but the universal rule is that they cannot be allowed when they are speculative, remote, and consequential, as they lack the element of certainty necessary to authorize a recovery therefor. On the other hand, when they can be proven with reasonable certainty, a recovery may be had. 1 Sedgwick, Damages (9th ed.), § 174; *Silurian Mineral Springs Co. v. Kuhn,* 65 Neb. 646, 91 N. W. 508; *Reiter v. Morton,* 96 Pa. St. 229. It is apparent from this rule that the difficulty lies, not in discovering the true rule of law, but in applying the different facts in each case to such rule, for each case must be governed by its own facts.

Taking respondent's own testimony, the only evidence concerning future profits was that, at the time he was discharged, there was about $7,500 worth of stock on hand, and that $1,000 worth of stock would bring a profit of $700; that the

cigarettes cost them $4.26 to $4.50 a thousand, and they were sold at $12, $15, and $25 a thousand. Even under the rule as announced above, it is doubtful if this is sufficient data upon which to base future profits with such a degree of certainty as to make them allowable as damages; as in *Silurian Mineral Springs Co. v. Kuhn, supra*, the court held that damages in the nature of anticipated profits on conjectural, expected, or hoped for sales cannot be recovered, as they were too remote and speculative. Again, in *Cuschner v. Pittsburgh-Hickson Co.*, 91 Wash. 371, 157 Pac. 879, this court said:

"The other item for which recovery is sought is that of loss of profits. The appellant claims that, if the goods had been shipped and received within the time contracted for, they would have been sold within the next two or three succeeding months, and that his profits upon such sales would have amounted to the sum of $650. The appellant and one of his salesmen testified that, if the goods had been received, they could have been sold, and that the profits would have been the amount specified. There was no evidence of the overhead charges of the business, of the amount of money invested therein, or of the profits which had been made at any time during the conduct of the business. The evidence offered in proof of the amount of damages was nothing more than the opinion of the witness. It amounted practically to a guess. There was no evidence of facts by which the amount of profits was established, or could be inferred. Prospective profits may become the measure of damages when they can be properly proved."

Though the record here did disclose the salaries, rent, and money invested, since there was no evidence in this case that any profits were made by the business prior to the alleged wrongful ejectment of respondent as manager, the rule as announced in the *Cuschner* case is controlling if the Grecian Tobacco Company is to be considered as a going concern. Nor can respondent escape this rule by contending that this is a new enterprise, which we think it was, without doubt, for

in such cases a much harsher rule applies in allowing future profits.

In *States v. Durkin,* 65 Kan. 101, 68 Pac. 1091, the court held that, before one may recover damages occasioned by the wrongful acts of another for loss of profits to a general business, it must be made to appear that the business had been in successful operation for such period of time as to give it permanency and recognition, and that such business was earning a profit which may be reasonably ascertained and approximated.

This case was cited with approval, and the rule thus announced was followed, in *Webster v. Beau,* 77 Wash. 444, 137 Pac. 1013. To the same effect are: *Fredonia Gas Co. v. Bailey,* 77 Kan. 296, 94 Pac. 258; *Kettering Mercantile Co. v. Sheppard,* 19 N. M. 330, 142 Pac. 1128; 1 Sedgwick, Damages (9th ed.), § 183.

The reason for this rule is obvious. In an old established business, where there is a showing that profits were made in the past, it is much more certain that profits will be made in the future than in a new business, where the question of whether any profits will be made in the future is more or less conjecture, opinion, and speculation. While it is true the Grecian Tobacco Company was formally established and not entirely new, it was yet in its infancy; no profits were shown to have ever been made by it; it lacked permanency and recognition, and, in comparison with an established business, was an experiment. Its existence and business proved to be merely desultory. The testimony of respondent that $700 profit would be made on $1,000 worth of stock, was merely his opinion of what would happen in the future, subject to all the contingencies incident to future profits to be derived by expected sales.

It does not follow, however, that the case should have been withdrawn from the jury. Respondent testified that, by reason of his trip from Montreal to Seattle, he expended the sum of $136.75, which was never repaid to him. While this was

denied by appellant, if, as a matter of fact, it was not so repaid, it is a proper item of damage to be recovered by respondent, as the failure to prove future profits will not prohibit a party from recovering actual expenditures. *United States v. Behan,* 110 U. S. 338.

The evidence was conflicting as to whether the contract was breached, and was, therefore, properly submitted to the jury, and no error occurred in the manner of its submission. It necessarily follows from the jury's verdict that it found that the contract was broken, and its decision, under such circumstances, is binding on this court. Though the item for railroad fare is allowable, there is no way of determining from the record whether the jury found that this money had been repaid to respondent or not, and thus whether it was included in their verdict of $1,000.

The judgment is therefore reversed, and the cause remanded for a new trial solely for the purpose of ascertaining whether this railroad fare was ever refunded or is due respondent.

Morris, Mount, Parker, and Fullerton, JJ., concur.