[No. 22056. Department One. August 12, 1930.]

LOCKIT CAP COMPANY, *Respondent,* v. GLOBE MANUFAC-
TURING COMPANY, *et al., Appellants.*[1]

[1] Reported in 290 Pac. 813.

184

*Carkeek, McDonald & Harris* and *Albert H. Solomon,* for appellants.

*Meier & Meagher,* for respondent.

MILLARD, J.—By written contract of July 17, 1928, the Lockit Cap Company agreed to supply the dies and pay to the Globe Manufacturing Company twenty-eight hundred dollars for the manufacture of five thousand so-called "lockit caps," intended for use on gasoline tanks of automobiles. The dies were to be of ordinary average quality and efficiency. The manufacturing company was to maintain the dies in working order and condition, except for the usual and common wear and depreciation; but if the dies needed correction or alteration, the cap company was to bear the reasonable expense therefor. The dies were to remain the property of the cap company and were to be returned upon demand in good condition, except for operative wear. Delivery of the finished product was to commence within two weeks after the dies were received, and concluded within thirty days subsequent to the date of the first delivery.

"It is agreed and understood that deliveries of finished product shall start not later than two weeks from receipt of said dies and equipment by first party

and that final delivery of completed contract number of five thousand (5,000) caps shall be made within and not later than thirty (30) days from date of first delivery.''

By their supplemental contract of August 4, 1928, the parties provided for certain changes in the construction of the caps:

''Also that they will perform one additional operation on the baffle-plate thereof, no additional time being required for this operation to comply with the terms of the sixth paragraph of the original contract.''

On August 4, 1928, the cap company delivered the dies, including baffle-plate dies, to the manufacturing company. The former also advanced to the latter eighteen hundred and thirty-seven dollars of the consideration of twenty-eight hundred dollars to be paid for the caps when completed. No caps were ever delivered by the manufacturing company to the cap company. Upon refusal of the manufacturing company to comply with written demand September 27, 1928, that deliveries of the caps commence within two weeks, the Lockit Cap Company instituted this action against the Globe Manufacturing Company, and against the Fidelity & Deposit Company of Maryland on its bond in behalf of the latter in the sum of twenty-eight hundred dollars, conditioned that:

''. . . the said Globe Manufacturing Company shall well and truly perform said contract and shall indemnify and save the Lockit Cap Company from any loss or damage which it may sustain by reason of the failure of the Globe Manufacturing Company to complete said contract in accordance with its terms and conditions.''

Plaintiff seeks recovery of eighteen hundred and thirty-seven dollars advanced in payment for the caps, three thousand dollars for conversion of the dies, and thirty-seven hundred and fifty dollars profits lost by

failure of the defendant to manufacture and deliver the five thousand caps. The affirmative defense interposed was that the changes made as demanded by the plaintiff in the dies, tools and materials prevented performance of the contract; and that the dies were not of the quality and efficiency required by the terms of the contract. Defendants also counterclaimed for twenty-seven hundred and five dollars. The cause was tried to the court without a jury, and resulted in findings and judgment in favor of the plaintiff against the defendant manufacturing company in the sum of fifty-eight hundred and thirty-seven dollars; and against the defendant surety in the sum of twenty-eight hundred dollars. From those judgments, both defendants have appealed.

Appellants first assign error upon the failure of the court to make a finding on the contention of the manufacturing company that the respondent had waived timely performance of the contract as specified therein. Such waiver as there may have been could have operated only upon non-performance of the contract prior to the notice of September 27, 1928. A waiver of past failures does not necessarily constitute a waiver of future defaults; and, while there can be no arbitrary forfeiture where delays have been acquiesced in, still a party, who by his conduct has not insisted upon a timely performance and has thereby waived performance within the time specified in the contract, may, nevertheless, thereafter declare a forfeiture or cancellation of the contract for delay, provided he first makes demand for performance and grants a reasonable time therefor.

"Even where time is made the essence of the contract, this provision may be waived by the party for whose benefit or protection it is inserted, either expressly or by extending the time for payment or per-

formance or by granting indulgence to the other party in this regard; and when such a waiver has been made, he cannot arbitrarily and summarily declare a forfeiture of the contract for delay, but must first demand payment or performance and give the other party a reasonable time and opportunity, after such demand, to comply.'' Section 219, Black on Rescission and Cancellation (2d ed.)

The time allowed by the written notice of September 27, 1928, was reasonable, for it gave the same length of time as was specified in the contract itself; therefore, there was no question of waiver upon which the court should have made a finding.

■ Appellants next insist that the evidence does not show performance of the contract by respondent, in that the respondent failed to supply the proper dies. Paragraph eight of the counterclaim alleges that, at the time the notice of September 27, 1928, was served, the work was sixty per cent completed, and that practically all of the lockit caps would have been completed ''in accordance with the terms of the contract between the parties had it not been prevented from doing so by plaintiff's notice of repudiation.'' This is hardly consistent with appellants' contention that the dies were so defective that they could not be used. Disregarding this inconsistency, we find sufficient evidence upon which the court could say that the dies were of ordinary average quality and efficiency for the manufacture of the caps, and that there was no lack of performance on the part of the respondent.

■ Appellants next complain of the award in favor of the respondent on the theory of conversion.

The manufacturing company gained possession of the dies lawfully. The contract provided that title to the dies remained in the respondent, and that upon demand the dies were to be returned to the respondent in

good condition upon completion of the contract. No demand was ever made for the dies. Where property is taken into possession with the consent of the owner, such possession does not become wrongful until demand, and a refusal, for its return. *Hanson v. Ostrander Ry. & Timber Co.*, 147 Wash. 104, 265 Pac. 159. Counsel for respondent argue that no demand was necessary because the demand would have been unavailing. True, if the demand would have been unavailing, there would have been no necessity therefor, the law never requiring, as a condition precedent, that a person shall do a useless thing. No demand is necessary as a condition to the maintenance of an action for conversion, if it is made to appear that the demand would have been futile. It might be that a demand would have been fruitless in the case at bar, but there is no evidence to sustain that contention. To constitute conversion, there must have been an intention on the part of the manufacturing company to take to itself the property in the dies or to deprive the respondent of same.

Granting that demand and refusal constitute only a form of proof and are unnecessary where a conversion may otherwise be established, we still fail to find any proof of conversion. The letter of September 29, 1928, written by a former attorney of the manufacturing company, in reply to respondent's notice of September 27, 1928, and relied upon by respondent as evidence of the futility of a demand, does not show an intention of the manufacturing company to take to itself or to unlawfully withhold the dies. It simply says that the manufacturing company does not feel compelled to complete the contract; and, therefore, if certain arrangements can be made to reimburse the manufacturing company for expenses and costs, that company "will extend to the Lockit Cap Company the liberty of

removing *their* dies and materials." That letter reads as follows:

"I have before me your notice directed to the Globe Manufacturing Company and the Fidelity & Deposit Company of Maryland, in which you state that:

" 'Through no fault or neglect of the Lockit Cap Company said Globe Manufacturing Company has failed, neglected and refused to make delivery of caps as in said contract provided;'
and in which you state:

" '. . . that unless deliveries of the finished product are started not later than on or before two weeks from this date (September 27, 1928), the Lockit Cap Company will deem said contract terminated and will demand, and if necessary sue for, the damages sustained by it by reason of the breach of said contract by said Globe Manufacturing Company;'

" 'This notice shall not be deemed in any way to waive or consent to any delivery in the furnishing of the finished product as contemplated under said contract, nor shall it be deemed as in any wise modifying said contract.'

"The constant insistence on the part of the Lockit Cap Company that various and sundry departures from the contract model and specifications, both written and verbal, has alone occasioned the delay in making deliveries. Furthermore, the Lockit Cap Company have not yet decided on what they want and such departures and delay have occasioned the Globe Manufacturing Company considerable expense for experimentation, etc., in their effort to accommodate the Lockit Cap Company in these numerous changes. The total amount of this cost has not been fully ascertained, but the enclosed bill in the amount of $655.27, is now due and payable as a portion of these costs. Inasmuch as the Lockit Cap Company have made several departures from the contract and still do not know what they want, there is no burden on the Globe Manufacturing Company to perform any of the terms of the contract.

"Therefore, I recommend that your clients arrange to reimburse the Globe Manufacturing Company for all extra expenses and costs, whereupon the Globe

Manufacturing Company will extend to the Lockit Cap Company the liberty of removing their dies and materials from 101 Spokane street.''

From that language alone, we can not hold there was a conversion.

■ If counsel rely upon the destruction or damaging of the dies as establishing conversion, that in and of itself does not show conversion. There must be a tortious damage or destroying. *Salt Springs National Bank v. Wheeler*, 48 N. Y. 492; 8 Am. Rep. 564.

''To constitute a conversion, the defendant must be guilty of some wrongful act of commission or omission which deprives the plaintiff of his property, either permanently or for an indefinite time.'' *Carroll v. Caine*, 27 Wash. 402, 408, 67 Pac. 993.

There is some evidence of the value of the dies as of the time of their delivery to the manufacturing company, and of breakage and deterioration of some of them. The evidence goes no further, and to award judgment for the original value of the dies without allowing an offset for the value of those to be returned would be erroneous. It follows, therefore, that the award of three thousand dollars for conversion of the dies must be set aside.

■ Appellants contend that the court erred in awarding to the respondent judgment for one thousand dollars on the theory of loss of profits.

Prospective profits are recoverable if they can be estimated with reasonable certainty. *Warner v. Channell Chemical Co.*, 121 Wash. 237, 208 Pac. 1104; *Nelson v. Davenport*, 108 Wash. 259, 183 Pac. 132. In the case at bar, we have a contract to manufacture five thousand ''lockit caps.'' It is admitted that this cap was patented and that there is nothing like it on the market. It follows, therefore, that there was no competition. The market still remains. The damage

cannot be the loss of sales. Damages for anticipated profits in the sale of this article must be denied for another reason. The respondent is undertaking a new and untried business or venture and one which has not yet demonstrated its merit and stability. The income and profits more or less depend upon contingencies other than mere production and delivery of the five thousand caps. There would be too much uncertainty and speculation to permit the fixing of the damages at the anticipated profits.

In *Iron City Toolworks, Ltd. v. Welisch,* 128 Fed. 693, an action for breach of a contract to manufacture and deliver to the plaintiff patented picks intended for sale to Alaska miners, recovery of loss of profits was denied, the court saying:

"The learned judge stated to the jury that the true measure of damages here, was the actual loss which the plaintiff sustained by reason of the failure to deliver these picks for the purpose for which they were intended. This, as a broad statement of the general rule, is quite correct. The difficult question is, what are the elements of this 'actual loss,' which is to be the measure of damage in a given case? or, in this case, how far are expected profits, or profits which plaintiff claims might have been realized but for the breach of contract by the defendant, such an element? No element of loss can be considered in the computation of damages, that is not clearly and unqualifiedly proved, and for this reason, the general rule, correctly stated by the learned judge in his charge, has always excluded proof of uncertain or speculative profits. So, where there is no market price for an article, damages cannot be computed upon the belief of plaintiff, or other witnesses, whether more or less probable, that the commodity contracted for, and not delivered, could have been sold for a certain price. Such evidence has not the degree of certainty required by the law, and the hardship that may in particular cases accrue to individual plaintiffs by the exclusion of such testimony, must be weighed against the greater hardship and in-

convenience that would result in the administration of justice from the admission of testimony of so vague and indefinite a character. An exception to the general rule, excluding expected profits as a basis for the computation of damages, or perhaps it would be better called a modification of its application, is found in cases where the failure of the defendant to deliver, has at least deprived the plaintiff of the benefit of a definite contract which he has made in reliance on the fulfillment of his contract with the defendant.''

▪ The true measure for the breach of the contract to manufacture and deliver the caps is the cost of securing performance of the work elsewhere, less the original contract price. This involves the application of the rule of avoidable consequences of a breach of a contract to manufacture. This constitutes the value of the performance by the appellant manufacturing company. Sedgwick on Damages (9th ed.), Vol. 2, p. 1205. See, also, *Florence Machine Co. v. Daggett,* 135 Mass. 582.

▪ The liability of the appellant surety company is measured by the terms of its bond.

The respondent is entitled to recovery against the Globe Manufacturing Company and the surety upon the bond for the eighteen hundred and thirty-seven dollars advanced in payment for the caps.

The cause is remanded with instructions to enter judgment accordingly.

TOLMAN, PARKER, and BEALS, JJ., concur.

MITCHELL, C. J., concurs in the result.