DONALD JANSSEN, Plaintiff-Appellee, v. HOWARD HOOK, Defendant-Appellant.

(No. 70-243;

Second District—August 9, 1971.

Petty and Kightlinger, of Mt. Carroll, (William B. Petty, of counsel,) for appellant.

Craig E. McGuire, of Polo, for appellee.

Mr. JUSTICE ABRAHAMSON delivered the opinion of the court:

On March 5, 1969, the plaintiff filed his complaint against the defendant for an alleged breach of an oral sales agreement and asked for damages in the amount of $3,200.00. The defendant filed a general denial and a counterclaim for $2,000.00 for breach of warranty as to the condition of the equipment purchased. The matter proceeded to trial, with no jury, on August 8, 1969, and the court entered a "preliminary opinion" that found on the issues in favor of the plaintiff but requested further evidence in regard to the value of the subject matter of the sale. A second hearing was accordingly held on October 24, 1969, whereafter judgment was entered in favor of the plaintiff in the amount of $2,300.00. After post-trial motions were denied, the defendant appealed from that judgment.

At the first hearing, the plaintiff testified that after several conversations with the defendant, it was agreed that he would sell two milk trucks and certain other equipment together with the rights to two milk routes to the defendant for $8,525.00. The defendant was to assume the balance of $4,950.00 owed by the plaintiff on the trucks and pay the difference in cash. On December 15, 1967, the plaintiff transferred title to the equipment and trucks to the defendant but received only $400.00 in payment. The wife of the plaintiff testified that she overheard the conversation between the parties and the defendant promised to pay $3,600.00 in cash and assume the unpaid balance on the trucks.

The defendant testified that he had agreed to "take over" the trucks for the $4,950.00 still owed on them and pay an additional $400.00 for one of the milk routes but nothing on the other route since the plaintiff himself had paid nothing for it.

It was disclosed at the hearing on October 24 that the plaintiff had purchased the two trucks and equipment from one Gene Behrens in September 1966 for $7,500.00. In addition, the plaintiff took over Behren's milk route at that time and paid him a percentage of the proceeds re-

ceived from Kraft Foods for milk obtained on the route. The plaintiff testified further that after he purchased the trucks from Behrens he replaced an engine in one for a cost of $950.00. Other witnesses testified for the plaintiff that the value of the equipment and routes sold was at least $7,500.00.

The defendant himself testified that the trucks were in poor condition when he obtained them and that he was compelled to spend considerable amounts of money to get "* * * them back into decent shape where a guy could haul milk * * *." Bills paid by the defendant for various work done on the trucks were received in evidence together with estimates prepared by a mechanic for additional maintenance. Behrens, the original owner, testified for the defendant that in his opinion the trucks were probably not worth even the $4950.00 in December, 1967. He also testified that the milk route itself was of little worth although he acknowledged receipts of approximately $100.00 a month for his share of the income derived from them. An officer of the bank holding the security interest on the trucks and equipment also testified for the defendant and stated that he was familiar with those items and that they were not worth more than the balance still owed on them.

After all proofs had been submitted, the trial court found that the parties had agreed to a transfer of the equipment and routes for $7500.00, $4800.00 of which was the balance of the assumed obligation to the bank. Of the difference of $2700.00, the defendant had paid $400.00 leaving a balance of $2300.00, the amount of the judgment.

The defendant here contends that the judgment thus entered was against the manifest weight of the evidence and that the trial court did not consider the testimony of the only two disinterested witnesses to appear, namely, the banker and original owner.

It is, of course, well established that the findings of a trial court will not be disturbed on review unless manifestly and palpably wrong or against the weight of the evidence. (*Ross v. 311 North Central Avenue Bldg. Corp.*, 264 N.E.2d 406, 412.) Where, as here, the matter is heard without a jury, it is the province of the trial judge to determine the credibility of the witnesses, weigh the evidence, and make the ultimate determinations of facts. Those determinations will not be disturbed unless they are manifestly against the weight of the evidence. (*Country Mutual Insurance Company v. Murray*, 97 Ill.App.2d 61, 75, 239 N.E.2d 498, 506; *Hall v. Illinois Nat. Ins. Co.*, 34 Ill.App.2d 167, 173.) We are not able to say that the findings of the trial court in this case were against the manifest weight of the evidence. The credibility of the witnesses for the respective parties was, as we have seen, a matter for the trial judge

to consider. There was sufficient competent evidence to support the findings of the court and we will not disturb those findings on review.

The defendant also contends that the trial court erred in its denial of his counterclaim based on the breach of expressed or implied warranties as provided in section 2—313 and 2—315 of the Commercial Code. Ill. Rev. Stat. 1969, ch. 26, pars. 2—313, 2—315.

■■ Section 2—313 provides that an express warranty can be created by any affirmation of fact by the seller "which relates to the goods and becomes part of the basis of the bargain * * *." The existence of an express warranty is a factual issue to be determined by the trier of fact. (*Capital Equipment Enter., Inc. v. North Pier Term. Co.*, 117 Ill.App.2d 264, 269, 254 N.E.2d 542, 544.) The defendant testified that the plaintiff advised him that one of the trucks was in "good condition" when, in fact, it needed extensive repair. The defendant admitted, however, that he had inspected and worked with the trucks prior to his purchase of them and was aware that they needed repairs. Under the circumstances, the finding of the trial court that an express warranty, as defined by the Code, had not been made was not against the manifest weight of the evidence.

Section 2-315 defines the so-called warranty of fitness for a particular purpose and codifies the requirements that the purchaser makes known to the seller the purpose for which an article is purchased and relies on the seller's skill or judgment. (Ill. Rev. Stat. 1969, ch. 26, par. 2-315; *Kirk v. Stineway Drug Store Co.*, 38 Ill.App.2d 415, 421.) Again, the existence of such a warranty is a question of fact to be determined by all the circumstances surrounding the transaction. Although the plaintiff was obviously aware that the defendant purchased the trucks to be used on a milk route, there is nothing to show that such use would differ from the ordinary use of trucks in general or that the plaintiff had any special skills relative to trucks on which the defendant relied.

We therefore conclude that the findings and judgment of the trial court were not against the manifest weight of evidence and that they ought to be affirmed.

Judgment affirmed.

MORAN, P. J., and SEIDENFELD, J., concur.