Dr. Luel P. OVERSTREET,
Plaintiff-Appellee,

v.

NORDEN LABORATORIES, INC.,
Defendant-Appellant.

No. 79–3556.

United States Court of Appeals,
Sixth Circuit.

Argued June 2, 1981.

Decided Feb. 3, 1982.

John L. Dorsey, Jr., Dorsey, Sullivan, King & Gray, Henderson, Ky., for defendant-appellant.

Rudy C. Bryant, Henderson, Ky., for plaintiff-appellee.

Before ENGEL, KEITH and KENNEDY, Circuit Judges.

KEITH, Circuit Judge.

This is a direct appeal of a judgment involving a breach of expressed and implied warranty under Ky.Rev.Stat. §§ 355.2–313, 2–314, brought pursuant to the district court's diversity jurisdiction 28 U.S.C. § 1332.

Defendant-appellant Norden Laboratories, Inc. ("Norden") appeals from a judgment of $40,500.00, awarded in favor of plaintiff-appellee Dr. Luel P. Overstreet, a Kentucky veterinarian and horse owner.

On appeal Norden alleges that the failure to instruct the jury on the requirement that the plaintiff must have relied on the express warranty was error. We agree. Reliance is an element of a cause of action for express warranty under Ky.Rev.Stat. § 355.2–313(1)(a). We therefore vacate the judgment entered below and remand for proceedings consistent with this opinion.

## FACTS

Dr. Overstreet is a practicing veterinarian and operator of a standard bred horse farm in Henderson County, Kentucky. Equine rhinopneumonitis is a virus which causes horses to exhibit symptoms which generally resemble a common cold. In pregnant mares, however, the virus will cause abortions. Norden Laboratories, Inc., a Nebraska corporation, manufactures and markets various drugs to veterinarians. Rhinomune, one of the drugs manufactured by Norden, is a vaccine designed to inoculate horses against equine rhinopneumonitis.

Rhinomune was first marketed by Norden in the spring of 1973. Norden's marketing program for the new, unique drug utilized magazine advertisements, brochures and sales persons. In the spring of 1973, about the time Norden began marketing Rhinomune, two mares on Dr. Overstreet's farm aborted their foals. Dr. Overstreet became concerned about a possible outbreak of equine rhinopneumonitis virus among his breeding horses. It was later determined that an equine rhinopneumonitis virus caused the abortions.

A Norden sales representative called on Dr. Overstreet's office and spoke with an associate of the doctor's concerning rhinomune. Dr. Overstreet became interested in the drug and allegedly read rhinomune promotional literature. Dr. Overstreet asserts that he then ordered a quantity of rhinomune, because of the representations contained in Norden's advertisements.

The rhinomune vaccine was administered to a number of Dr. Overstreet's horses during the three months prior to November, 1973. Six of the inoculated mares on Dr. Overstreet's farm aborted their foals during the spring of 1974.[1]

Dr. Overstreet instituted this breach of warranty action under Ky.Rev.Stat. §§ 355.2–313, 2–314 against Norden to recover losses resulting from the aborted foals. At trial, Dr. Overstreet alleged that Norden breached expressed and implied warranties which Norden made concerning its rhinomune vaccine. A jury returned a

---

[1] Dr. Overstreet vaccinated a total of 23 mares from August 10, 1973 to November 9, 1973. In his initial complaint, the plaintiff stated that he vaccinated 19 mares, twelve aborted their foals, one foal died, two mares died and four mares were unable to conceive. However, upon review of the preliminary discovery materials, Judge Gordon granted a partial summary judgment giving the defendant judgment on some of plaintiff's claims.

verdict of $40,500.00 in favor of Dr. Over-street.

■ Norden made motions for judgment n.o.v. and, in the alternative, for a new trial. Both motions were denied. Defendant Norden perfected this appeal. Norden assigns as error jury instructions on the issue of its liability under Ky.Rev.Stat. §§ 355.2–313, 2–314. Norden argues that the trial court should have instructed the jury that in order to recover, plaintiff must establish that he relied on any warranty which Norden made. Appellant's challenge is well founded, but imprecise. As Norden contends, reliance is an element of a breach of an expressed warranty action under Kentucky law, and the jury should have been instructed accordingly. However, the implied warranty of merchantability Ky.Rev. Stat. § 355.2–314 is a duty imposed by Kentucky law and plaintiff's reliance thereon is not a requisite to defendant's liability for breach.

The verdict form allowed the jury to award a judgment against Norden without stating which warranty was breached, consequently we cannot determine under which theory appellant's liability was imposed. We find these jury instructions were erroneous. Because the instructions were erroneous and, for the reasons set forth below, we reverse the trial court's judgment and remand for proceedings consistent with this opinion.

## A. Implied Warranty of Merchantability

The implied warranty of merchantability as set forth in the Ky.Rev.Stat. § 355.2–314 provides in pertinent part:

"(1) Unless excluded or modified (KRS 355.2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . ."

To be merchantable, goods must, *inter alia*, "be fit for the ordinary purposes for which such goods are used." Ky.Rev.Stat. § 355.-2–314(2)(c).

The implied warranty of merchantability arises by operation of law. As such, it does not require reliance as an element of a purchaser's recovery. Consequently, Norden's reliance argument, so far as it relates to the implied warranty of merchantability, is without merit. We find that Judge Gordon properly instructed the jury on the implied warranty theory. However, we hold that there is insufficient evidence on this record to sustain a finding that Norden breached its implied warrant of merchantability.

## B. Express Warranty

Appellant contends that the jury instructions and verdict form [2] were improper, because neither required a finding of reliance as an element of recovery under the express warranty. We agree.

■ We appreciate the formidable task which confronts a trial judge in charging a jury. We must nevertheless remain loyal to the mandate of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), which requires a federal court sitting in diversity to apply the substantive law of the state in which it sits. In the instant case, however, no Kentucky court has construed Ky.Rev.Stat. § 355.2–313.[3]

---

**2.** Verdict of Jury on Issue of Liability: Questions:

1. Did Dr. Overstreet violate any duties owed by him as a buyer to the seller Norden in his use of the drug Rhinomune?
Yes     No x
If your answer to the above question is "yes", you will not answer question 2, but will return to the courtroom. If your answer to question 1 above is "no", then answer question 2.
2. Did Norden violate any of its warranties of its product Rhinomune to Dr. Overstreet?
Yes x     No     *See* App. 28.

**3.** Ky.Rev.Stat. § 355.2–313 provides:
Express Warranties By Affirmation, Promise, Description, Sample.
(1) Express warranties by the seller are created as follows:
(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

Thus, it is the duty of the federal court to decide such unsettled issues of state law [4] as a Kentucky state court would. *See Erie v. Tompkins, supra; Hardy v. Johns-Manville Sales Corp.*, 509 F.Supp. 1353, 1357 (E.D. Tex.1981); *Delduca v. U.S. Fidelity and Guaranty Co.*, 357 F.2d 204, (5th Cir. 1966). "[A] federal court without benefit of guidance from the forum state's highest court or its state legislature should analyze the indications and determine the path that state would follow." *Id.* at 207.

■ Appellant noted above that the jury instructions did not include a charge that Dr. Overstreet must have relied on the express warranty. Moreover, the record before us does not reflect that the trial court properly ascertained whether reliance was an element of appellee's recovery. Accordingly, we hold that these instructions were erroneous. We must now decide, as we think a Kentucky court would decide, the elements of an express warranty action.

■ Substantial compliance with the directions for the use of a product is a condition precedent to the existence of an express warranty. *See, e.g., Elanco Products Co. v. Akin-Tunnell*, 516 S.W.2d 726, 15 UCC Rep. 777, 783–84 (Tex.App.1974); *Chatfield v. Sherwin-Williams Co.*, 266 N.W.2d 171, 24 UCC Rep. 285, 292 (Minn. 1978). The scope of a product warranty is limited to the product's intended use. Use of a product contrary to its directions will preclude recovery for breach of an express warranty. *See Elanco Products Co., supra*, 15 UCC Rep. at 784.

■ An express warranty may be created by any affirmation of fact or promise made by a seller which relates to the goods. Ky. Rev.Stat.Ann. § 355.2–313(1)(a) (Baldwin). The language creating an express warranty need not contain special phrases or formal words such as guarantee or warranty. Ky. Rev.Stat. § 355.2–313(2). *See* Note, *The Uniform Commercial Code and Greater Consumer Protection Under Warranty Law*, 49 Ky.L.J. 240, 243 (1960) [hereinafter cited as Consumer Protection Under Warranty Law]. In fact, a seller need not have intended that the language create an express warranty. Ky.Rev.Stat.Ann. § 355.2–313(2) (Baldwin). Every statement made by a seller, however, does not create an express warranty. A seller may puff his wares and state his opinion on their value without creating an express warranty. Ky. Rev.Stat.Ann. § 355.2–313(2) (Baldwin). *See, e.g., Royal Business Machines v. Lorraine Corp.*, 633 F.2d 34, 30 UCC Rep. 462, 468 (7th Cir. 1980).

■ The existence of an express warranty depends upon the particular circumstances in which the language is used and read. *See, e.g., Interco, Inc. v. Randustrial Corp.*, 533 S.W.2d 257, 19 UCC Rep. 464, 470 (Mo.App.1976); *Sessa v. Riegle*, 427 F.Supp. 760, 21 UCC Rep. 745, 752 (E.D.Pa.1977), *aff'd without op.*, 568 F.2d 770 (3rd Cir. 1978). A catalog description or advertisement may create an express warranty in appropriate circumstances. *See Interco, Inc., supra*, 19 UCC Rep. at 470; *McKnelly v. Sperry Corp.*, 642 F.2d 1101, 30 UCC Rep. 1533, 1540 n.10 (8th Cir. 1981). The trier of fact must determine whether the circumstances necessary to create an express warranty are present in a given case. *See Sessa, supra*, 21 UCC Rep. at 751–52; *Janssen v. Hook*, 1 Ill.App.3d 318, 272 N.E.2d 385, 388 (App.Ct.1971). The test is "wheth-

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model. (1958 c 77, § 2–313. Eff. 7–1–60).

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commen- dation of the goods does not create a warranty (1958 c 77, § 2–313. Eff. 7–1–60).

4. Where a federal court's jurisdiction is based solely on diversity of citizenship, the difficulty of ascertaining what the state courts may thereafter determine the state law to be does not in itself afford a sufficient ground for declining to exercise its jurisdiction. *Meredith v. Winter Haven*, 320 U.S. 228, 234, 64 S.Ct. 7, 10, 88 L.Ed. 9 (1943).

er the seller assumes to assert a fact of which the buyer is ignorant, or whether he merely states an opinion or expresses a judgment about a thing as to which they may each be expected to have an opinion and exercise a judgment." *Wedding v. Duncan*, 310 Ky. 374, 378, 220 S.W.2d 564, 567 (1949). *See* Consumer Protection Under Warrant Law, *supra*, at 243.

■■■■ The mere existence of a warranty is insufficient to sustain an action for breach of an express warranty. The warranty must be "part of the basis of the bargain" between the parties. Ky.Rev. Stat.Ann. § 355.2–313(1)(a) (Baldwin). A warranty is the basis of the bargain if it has been relied upon as one of the inducements for purchasing the product. *See* Ky.Rev. Stat.Ann. § 355.2–313(1)(a), Comment 1(C) (Baldwin); [5] Consumer Protection Under Warranty Law, *supra*, at 243; *Van Deren Hardware Co. v. Preston*, 224 Ky. 170, 5 S.W.2d 1052, 1053 (Ky.1928). *See also Hagenbuch v. Snap-on-Tools Corp.*, 339 F.Supp. 676, 680, 10 UCC Rep. 1005 (D.N.H. 1972); *Stamm v. Wilder Travel Trailers*, 44 Ill.App.3d 530, 3 Ill.Dec. 215, 358 N.E.2d 382, 20 UCC Rep. 1142 (App.Ct.1972); Bender's UCC Service, Duesenberg & King, Sales and Bulk Transfers § 601, n.2 (Matthew Bender & Co. 1980). *But see, Interco, supra*, 19 UCC Rep. at 469.

■■■■ A buyer is not under a duty to investigate the seller's representations; he may accept them at face value. *See Interco, supra*, 19 UCC Rep. at 469; *City Machine & Manufacturing Co. v. A. & A. Machinery Corp.*, 4 UCC Rep. 461, 465 (E.D.N. Y.1967). However, a buyer may not rely blindly on a statement or affirmation that he knows is incorrect. *See City & Manufacturing Co., supra*, at 465; *Royal Business Machines, supra*, 30 UCC Rep. at 472. A buyer does not disregard any special knowledge he possesses or his accumulated expe-

rience with a product in determining whether to enter the bargain. *Id.; Janssen, supra*, 272 N.E.2d at 488. Consequently, a statement known to be incorrect cannot be an inducement to enter a bargain. *City Machine & Manufacturing Co., supra.* An incorrect representation by the seller which is qualified in any manner may become the basis of a bargain to the extent it is believed and relied upon. For example, a seller represents in its advertising that its product is capable of lifting 100 pounds. The buyer is aware that the product cannot lift the weight claimed in its advertising. Nevertheless, he relies on his subjective belief that the product could lift 75 pounds and purchases the product. The product fails to lift 75 pounds. In an action for breach of express warranty against the seller, the buyer will prevail. The seller cannot complain because his product failed to perform at a level of proficiency lower than that originally claimed in its advertising.

■■■■ We do not reach the issue of whether an expert may rely on the representations of another expert in his area of specialty. At a minimum, however, an expert may rely on the representations of a seller of a newly marketed, unique product. *Butcher v. Garrett-Enumclaw Co.*, 20 Wash. App. 361, 581 P.2d 1352, 24 UCC Rep. 832, 843 (Ct.App.1978). In *Butcher*, the court held that an expert with many years of experience as a conventional saw mill operator and consultant could rely on the representations of the seller of a newly developed portable small log sawmill. Where the capabilities and properties of a unique, newly developed product are known only to the seller, the expert is in no better position to evaluate the representations of the seller than a layperson. Therefore, he is entitled to reply on representations concerning such a novel product. *See Grinnell v. Charles Pfizer & Company*, 274 Cal.App.2d 424, 79

**5.** Comment 1(c) states in full:

Materiality of Affirmation, Promise, Description, Sample. Under the Code, the qualification that affirmations, etc. create a warranty if made "as the basis of" the bargain,

appears to be substantially the same as the "reliance" qualification in § 12 of the Uniform Sales Act, former KRS 361.120. *Van Deren Hardware Co. v. Preston*, 224 Ky. 170, 5 S.W.2d 1052 (1928).

Cal.Rptr. 369, 378 (Ct.App.1969) (Physician could rely upon representations of drug manufacturer where manufacturer possessed superior knowledge concerning the properties of the drug.)

## C. Damages

Norden contends that the trial court improperly instructed the jury (1) on the issue of causation, and (2) as to the proper measure of damages. Although both Judges Engel and Kennedy agree, I remain unpersuaded.

### Causation

I cannot agree with my colleagues that causation was not established as a matter of law. Concurring opinion *infra* at 18. Although the trial court did not issue model instructions, they were adequate on the issue of causation as an element of Norden's liability.[6] The instructions permit recovery only for those damages directly resulting from the seller's breach. The problem is that the causation language was not repeated on the issue of damages. The trial was not bifurcated. However, the jury was asked first to decide whether there was a breach of warranty. The jury returned a verdict holding Norden liable. The jury was then instructed on the issue of damages.

Since you have established liability in this case on the part of Norden Industries, you are not called upon to award such damages as you may believe from the evidence will fairly and reasonably compensate Dr. Overstreet for the loss of the aborted fetuses of his six mares in 1974 at the time of the abortions.

In arriving at the damages, if any, you will fix the damage as to each mare by what you find to be the difference between the fair market value of said mare with her foal and the fair market value of said mare after the loss of her foal at the point in time 1974 of the abortion, but in no event shall you award a total award in excess of $119,500, the amount claimed by Dr. Overstreet in his testimony. As I instructed you in the case of liability, the burden remains with Dr. Overstreet to prove his damage by a preponderance of the evidence. That is, the greater weight of the credible evidence. Trial Transcript at 144–145.

This instruction did not permit the jury to determine which of appellee's losses were caused by appellant's breach. In effect, it held as a matter of law that the measure of damages was the value of the aborted foals, leaving for the jury only the issue of what that value was. The instructions should have included causation language equivalent to that used to establish the breach.[7]

---

**6.** The trial court instructed the jury as follows:

[N]ow, in this case Dr. Overstreet claims that the defendant breached its seller's warranty of the drug Rhinomune in that said drug was not fit for the use for which it was sold and failed to perform as set forth in the advertised data furnished to persons practicing veterinary medicine by the defendant Norden in that when administered to the healthy animals as directed by the seller Norden, the drug failed to effectively immunize his mares from the disease of equine rhinopneumonitis, all to his damage.

... It is further the law that if the seller makes any additional printed or oral statements in such form as imports special warranties of performance of the product then the product must perform generally to the extent so promised by the seller, provided it is used by the buyer in the manner prescribed by the seller for its effective use.

Thus, we see that if special warranties [express] are given by the seller, and if the buyer administers and uses the product to the extent and manner as required by the seller for the use of the product and the product fails to substantially perform as warranted *and the buyer suffers damage directly resulting therefrom, then in those circumstances, under the law, the buyer would be entitled to be compensated for any damage suffered.*

... The question here for your decision is not whether the drug so caused the abortion, as Dr. Overstreet does not make that contention. The question is whether or not when administered under the required recommendations of healthy animals, the product substantially met the standard of the warranties given, that is, to prevent the contracting of the disease and the resulting abortions. (emphasis supplied) Trial transcript at 85–86.

**7.** See note 6.

Measure of Damages

The trial court relied on *Schleicher v. Gentry*, 554 S.W.2d 884 (Ky.App.1977), and instructed the jury that the proper measure of damages was "the difference between the fair and reasonable market value of each of the mares with foal and the fair and reasonable market without foal." Trial transcript at 144.

Norden argues that plaintiff's recovery is limited under Ky.Rev.Stat. § 355.3–714(2) to the cost of the vaccine. Norden reasons as follows. Norden's vaccine did not cause the equine rhinopneumonitis in the mares, and plaintiff would not have used any other preventative. Therefore, the cost of the vaccine is the only loss plaintiff has suffered.

Norden relies heavily upon its contention that Dr. Overstreet made conflicting statements concerning whether he would have used another product.[8] However, the resolution of factual disputes lies clearly within the province of the jury.

Norden argues that to recover consequential damages plaintiff must establish that the vaccine or the breach caused the injury. The specific facts necessary to sustain an action for breach of warranty vary with each warranty made. Therefore, a determination of what exactly the defendant warranted is essential. A warrantor, by words or acts, establishes the conditions and circumstances which may give rise to his liability. *Brown v. Globe Laboratories, Inc.*, 165 Neb. 138, 84 N.W.2d 151 (1957). In *Brown*, the plaintiff, a rancher, recovered losses from a vaccine manufacturer for the sickness and death of his sheep. The manufacturer warranted that the vaccine would prevent enterotoxemia, a disease which develops in sheep as a result of their diet. In *Brown*, plaintiff made no showing that the vaccine caused the disease. On the contrary the evidence indicated that the enterotoxemia had developed independent of the vaccine used to prevent the disease. The court affirmed the manufacturer's liability on the ground that the vaccine failed to perform as warranted.

## ALTERNATIVE PRODUCT RULE

Judges Kennedy and Engel reason that Dr. Overstreet must establish that an equally effective alternative product was available and would have been used by Dr. Overstreet before he can recover consequential damages for breach of Norden's express warranty. I disagree. Therefore, I address this question separately. The alternative product rule announced today is not supported by the law or public policy.

First, the proposed rule would require plaintiff to prove that at the time the warranted product was purchased, he was aware that an available alternative product existed. Second, the proposed rule mini-

---

**8.** Excerpt from Dr. Overstreet's deposition taken on January 31, 1977:

"Q. Doctor, if you had not have used Rhinomune, what would you have done" Would you have used anything?
A. No, I wouldn't.
Q. You wouldn't have used anything?
A. No, I wouldn't.
Q. I believe you said you have never used Pnenumabort?
A. That's right.
Q. Another product on the market?
A. That's right.
Q. So, if you had not used Rhinomune, you would not have used anything?
A. That's right.
Q. And so that—
A. I might have the second year after I had all these abortions, but I wouldn't have the first year" (App., pp. 106–107).
Testimony of Dr. Overstreet at Trial:

"Q. Mr. Dorsey asked you a question to the effect that would you have used any other drug, vaccine besides Rhinomune. You stated you would not as he stated the question, or not as the facts were. Would you explain that?
A. Well, I stated—in answer to his question 'the way the facts being.'
Me knowing that Rhinomune was going to be available, if there had not been any other vaccine and I'd known that this Rhinomune was not going to be available that year, we would have made the determination earlier in the year whether to vaccinate with the other vaccine Pneumabort. But, knowing that this vaccine was going to be made available, then I chose not to use Pneumabort.
Q. You made this decision based on the advertising and information you have ascertained as to the facts that Rhinomune would prevent equine rhinopneumonitis?
A. That's right." (App. pp. 65 and 66)

mizes the purpose and effect of reliance on a product warranty. It is unreasonable to assume that consumers are able to determine the relative effectiveness of a given product. The available alternative product rule, therefore, will penalize consumers because they lack meaningful independent information about the products they purchase. Moreover, warranty actions generally arise where there is a disparity in the relevant information possessed by the consumer and warrantor.

An alternative product will be absent primarily in two situations: either when the product or the consumer is in some way unique. In either of these situations, the commercially available alternative product rule could lead to absurd results. Assume that consumers A and B purchase a particular product and in both instances the product fails to perform as warranted. Consumer B is allergic to all alternative products, while Consumer A has no such allergies. Consumer A recovers consequential damages because alternative products were available to him. Consumer B, however, could only have utilized the one product with success. According to the commercially available alternative rule, Consumer B could only recover incidental damages. I know of no principled basis for enabling manufacturers and other warrantors of products to receive this windfall. The recovery of consequential damages in an action based on an express warranty should not depend upon a mere fortuity, the uniqueness of the consumer.

The other circumstance in which the consumer will not be able to purchase commercially available alternative products will occur when the product itself is unique. A product is unique in two instances. The first occurs when the product allegedly is a new breakthrough. The rule announced today will allow manufacturers of new products to make unsupportable claims concerning product effectiveness; yet insulate the manufacturers from liability for consequential damages. In my view, this approach is tantamount to the licensing of placebos. Moreover, the relative cost of litigation will discourage consumers from initiating valid suits where as here only incidental damages may be recovered. For the foregoing reasons, I regard as unsound the available alternative product rule announced today.

At the second trial of this case, a jury may find: 1) that Norden warranted that the vaccine Rhinomune would prevent equine rhinopneumonitis, a disease which almost invariably induces abortions in mares; and 2) that Norden breached its warranty when six of Dr. Overstreet's horses, properly inoculated with Rhinomune, contracted the disease and aborted. The essence of Norden's warranty would be the representation that mares inoculated with Rhinomune would not contract equine rhinopneumonitis and abort. It therefore would be foreseeable that if the vaccine failed to perform as warranted, a purchaser would probably sustain losses due to aborted foals. In my view these losses are precisely the type of losses contemplated under Ky.Rev.Stat. § 355.2–714(3).[9]

Norden's liability arose because its product failed to prevent the disease as warranted, not because plaintiff's mares aborted foals. Accordingly, I would allow plaintiff to recover without considering the alternate product rule.

### Conclusion

We have analyzed the Kentucky cases involving express warranties which were decided prior to the enactment of Ky.Rev. Stat. 2–313(1)(a). Further, we sought guid-

---

9. Ky.Rev.Stat. § 355.2–715(2)(a) provides:
   (2) Consequential damages resulting from the seller's breach include:
   (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and
   (b) injury to person or property proximately resulting from any breach of warranty.

However, we note with interest that the official comment (1) to Ky.Rev.Stat. § 355.2–715.-2(2) construes subsection (2)(a) as imposing on a buyer a requirement "to attempt to minimize damages by cover or otherwise" under appropriate circumstances. It does not, however, operate as a defense to an otherwise actionable breach.

ance from other Erie indicators of state law, including the sparse legislative and scholarly commentary. These Erie-indicators support our conclusion that reliance is an element in an action for express warranty under Kentucky law. Further, my colleagues hold that the trial court improperly instructed the jury on the measure of damages.

For these reasons, and those noted above, we reverse and remand for proceedings consistent with this opinion. It is so ordered.

ENGEL and CORNELIA G. KENNEDY, Circuit Judges, concurring specially.

We agree with Judge Keith that the evidence is insufficient to sustain a finding that appellant breached any implied warranty. We also agree that while there was sufficient evidence for the jury to find that appellant expressly warranted that Rhinomune prevents equine rhinopneumonitis, the trial court's instructions on express warranty erroneously failed to include appellee's reliance on the warranty as a necessary element of the claim. However, we do not agree with Judge Keith that the District Court correctly instructed the jury on the measure of damages.

There was evidence at trial that Rhinomune failed to prevent appellee's mares' contracting equine rhinopneumonitis, thereby failing to prevent the abortions of appellee's foals. The Rhinomune did not cause the equine rhinopneumonitis, and appellee does not here claim that it did. There was conflicting evidence on the efficacy of Rhinomune in general. There was also evidence that no abortion preventive more effective than Rhinomune was available to appellee, and that even if one was available, appellee would not have used it.

The District Court's instruction on damages required the jury to award appellee, after it found a breach of warranty, the difference in value between the mares with foal and the same mares without foal. In directing the jury to award this amount the District Court was holding that the value of

the foals was the correct measure of damages in all circumstances which the jury could find. This was error.

The measure of damages for breach of warranty in Kentucky is set out in Ky. Rev.Stat. §§ 355.2–714 and 355.2–715. Section 355.2–714(2) provides for the recovery of "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, ..." Thus, if appellee persuades the jury on remand that appellant breached an express warranty, he is entitled to the difference in value between Rhinomune as he received it and the value Rhinomune would have enjoyed if it had worked as promised. Section 355.2–714(3) permits recovery as well for damages incidental to and a consequence of the breach. Section 355.2–715(1) defines incidental damages. This section entitles appellee to recover costs incurred in handling and administering the Rhinomune and any other expenses of this type. The District Court failed to instruct the jury on these elements of damages.

The only possible support for the instruction that the District Court did give is section 355.2–715(2). This section defines consequential damages, damages that are a consequence of the breach, as follows:

> Consequential damages resulting from the seller's breach include (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and (b) injury to person or property proximately resulting from any breach of warranty.

Under this section it is clear that once appellee has demonstrated a breach of warranty he may recover only for damages that are *caused* by the breach. *See White & Summers, Uniform Commercial Code* § 10–4 (1972); *Brown v. Globe Laboratories, Inc.*, 165 Neb. 138, 84 N.W.2d 151, 160, 163, 167 (1957).[1]

---

1. *Brown v. Globe Laboratories*, relied on by Judge Keith, *supra*, at 1293, involved a vaccine that was supposed to prevent enterotoxemia in lambs. The vaccine plaintiff used caused disease in some lambs and failed to keep other lambs from contracting enterotoxemia. As

■ The only item of consequential damages appellee claimed here was the value of the aborted foals. Appellee might have established a causal link between the loss of the foals and the breach in any of several ways. He might have claimed that the abortions were directly due to some effect of the vaccine, or that this batch of Rhinomune was ineffective and a good batch of Rhinomune would better have prevented the abortions. He might have claimed that the warranty induced him to forego some other, effective means of preventing the abortions, or that he acted to his detriment in some other way in reliance on the warranty. Of these possible claims, there is evidence in the present record to support the claims that appellee would have used another abortion preventive but for the Rhinomune warranty or possibly that appellee's lot of Rhinomune was ineffective as compared to other Rhinomune.[2] The evidence on these theories is conflicting. Thus, causation was not established as a matter of law. If neither Rhinomune nor any other product or device would have been effective or could have been used by appellee to prevent the abortions, then any breach of warranty did not cause the abortions. The fact that the abortions were foreseeable if the Rhinomune did not work does not mean the breach of warranty was the *cause* of the abortions. There was simply a failure to prevent an occurrence that nothing would have prevented, and appellee may not recover the value of the foals.

Judge Keith correctly notes that appellant established the conditions of liability when it warranted that Rhinomune would prevent equine rhinopneumonitis. However, the warranty did not further establish, by itself, appellant's liability for particular items of consequential damage in the event of a breach. Ky.Rev.Stat. § 355.2–715(2) clearly requires that the additional element of causation be proved to establish liability for consequential damages. The concern that Judge Engel and I share is that the jury was not permitted to decide whether appellant's promises caused any damage to result from the breach where the evidence on this issue was in dispute.

■ To our minds the result we reach is a straightforward application to the facts of this case of the well-settled requirement that causation must be proved to recover damages. Judge Keith overstates our contribution to the law by categorizing it with the heady title "Alternative Product Rule." Nonetheless, Judge Keith's concerns about the scope of the result prompt some additional comments. The inquiry is always whether the breach caused the particular harm complained of. The existence or nonexistence of an alternative product aids this inquiry only in those cases where there is no other causal link between the breach and the harm for which consequential damages are sought.

The existence of an alternative product would not be relevant in this case if appellee had had his mares impregnated in reliance on a warranty by appellant and now sought to recover that cost. It would not be relevant had appellant, in reliance on the warranty, entered into contracts for delivery of the foals to another and been sued for failure to deliver. Appellee's reliance on the warranty would have caused him to incur expenses and the breach would have

Judge Keith notes, plaintiff in *Brown* was permitted to recover damages for the failure of the vaccine to prevent enterotoxemia. *Brown* does not here lead to the result Judge Keith suggests. In *Brown* the uncontradicted evidence showed that plaintiff had used an effective vaccine from another manufacturer for several years. The failure of the vaccine that was the subject of the suit caused plaintiff's damages because the warranty induced plaintiff to forego the use of a product that would have worked. Thus the failure of the product to prevent the disease as promised, though it did not cause the disease, still caused the losses that resulted from the disease, since it did cause plaintiff to forego the use of the effective vaccine. In this case there is a jury question whether Rhinomune, although it did not cause the rhinopneumonitis, nonetheless caused appellee damages when his horses aborted. The District Court's failure to let the jury answer that question requires reversal.

2. Appellant's alleged warranty that Rhinomune was 100% effective could arguably provide a basis for a jury finding that the batch of Rhinomune used was not up to par.

caused those losses, even in the absence of an effective alternative product.

An example from every day living may be useful. Let us assume, as appears to be the case, that nothing will reverse or prevent baldness. The condition is genetic and beyond the control of medicine. Suppose a warrantor, in good faith, represents to a man who is beginning to go bald that use of the warrantor's product will prevent the loss of his hair. The product fails to work and the man goes bald. He can recover for the diminished value of the product he bought and he can recover any expenses incurred in administering or storing the product. That is the import of Ky.Rev. Stat. §§ 355.2–714, 355.2–715(1). If in reliance on the warranty he gave away his assortment of wigs he could recover from the warrantor the cost of replacing them. This would be an item of consequential damages under Ky.Rev.Stat. § 355.2–715(2). However, he could not recover for the loss of his hair. The breach simply had no effect on the presence or absence of the hair.

In those few cases where the existence of an alternative product is important, the defendant is not entitled to an instruction on the lack of alternatives unless the issue has been fairly raised. If it has been fairly raised, as it has here, then as a necessary part of establishing causation the plaintiff bears the burden of proving that an effective alternative was available. We do not share Judge Keith's concern that this is an onerous burden in the few cases where it will arise.

The result we reach does not insulate manufacturers from liability for consequen-

tial damages or lead to absurd results, as Judge Keith fears.[3] Liability for truly consequential damages, including damages flowing from reliance on the warrantor's promise, should be a sufficient deterrent to unsupportable claims of performance. If not, a suit alleging fraud might be appropriate, and there are many state and federal agencies that police false advertising. It is not also necessary to award damages where no damage has been caused, in effect imposing absolute liability for a breach of warranty, as Judge Keith would do. This would render the consequential damages provision of Kentucky's statute meaningless. It is not a windfall to the warrantor to be liable only for losses that it causes, nor is it a hardship to the warrantee only to recover for losses caused by the breach.

---

3. Judge Keith posits Consumer A and Consumer B, both of whom buy a product which fails to perform as warranted. Consumer A could have used an alternative, but Consumer B could not, being allergic to all alternatives. Judge Keith claims that under our analysis Consumer A would be able to recover consequential damages but Consumer B would not, and argues that this distinction between the two is unprincipled.

Our analysis does not lead to the blanket result that Judge Keith fears, requiring that all of Consumer A's claims for consequential damages be satisfied and all of Consumer B's denied. That depends on the existence of a caus-

al link between the breach and each item of damage claimed. However, to make Judge Keith's example concrete, assume that the product A and B used was a drug warranted to prevent disease, and the drug proved ineffective. Assume also that both A and B sue to recover for contracting the disease and not for any other damage. The fact is that A's contracting the disease was a consequence of his not using some other drug in reliance on the warranted product, while B could have done nothing else. B's illness was not a consequence of the breach. While A was harmed by the breach, B was not. This is a perfectly principled distinction between A and B.