BRIAN D. FELLEY, Plaintiff-Appellee, v. THOMAS SINGLETON et al., Defendants-Appellants.

Second District    No. 2—98—0043

Opinion filed January 14, 1999.

Philip H. Hart, of Belvidere, for appellants.

William E. Gottfred, of Reese & Reese, of Rockford, for appellee.

PRESIDING JUSTICE BOWMAN delivered the opinion of the court:

Defendants, Thomas and Cheryl Singleton, appeal from an order entered by the circuit court of Boone County in this small claims ac-

tion. Defendants contend that the trial court erred when it found that statements they made to plaintiff, Brian D. Felley, when he purchased a used car from them constituted an express warranty. We affirm.

The relevant facts are not in dispute. On June 8, 1997, plaintiff went to defendants' home to look at a used car that defendants had offered for sale by newspaper advertisement. The car was a 1991 Ford Taurus and had about 126,000 miles on it. After test-driving the car and discussing its condition with defendants, plaintiff purchased the car from defendants for $5,800.

At trial, plaintiff testified that he soon began experiencing problems with the car. On the second day after he bought the car, plaintiff noticed a problem with the clutch. Over the next few days, the clutch problem worsened to the point where plaintiff was unable to shift the gears no matter how far he pushed in the clutch pedal. Plaintiff presented an invoice dated June 18, 1997, showing that he paid $942.76 on that date for the removal and repair of the car's clutch.

Plaintiff further testified that the car developed serious brake problems within the first month that he owned it. Plaintiff presented two invoices for work he had done on the car's brakes. One of the invoices shows that on July 9, 1997, plaintiff paid $971.18 for brake work on the car. The second invoice shows that on September 16, 1997, plaintiff paid $429.09 for additional brake work on the car.

Plaintiff called Robert Hanover as an expert witness. Hanover is a technician at the Car X Muffler facility that performed the brake work on the car. Hanover is an underbody specialist with experience in diagnosing and repairing problems with clutches and brakes. Hanover examined the car when plaintiff brought it in on July 9, 1997. His examination revealed that the rear brakes on the car were not functioning because the calipers had locked up and that the car was only braking on the front brakes. In order to fix this problem, Car X installed new calipers on the rear brakes. Hanover also testified that both the front and rear brakes needed the pads and rotors replaced. Based on his experience, Hanover stated that problems such as those with the car's brakes take considerable time to develop. Hanover opined that the car's brake problems therefore probably existed when plaintiff purchased the car.

Hanover also testified that he was familiar with the type of work performed on the car's clutch and that he had experience with Rock River Ford, the facility that performed the clutch work on the car. Based on his experience, his discussions with plaintiff regarding the clutch problem, and the invoice showing the repair work that was performed on the clutch, Hanover opined that the clutch was not in

good operating condition when plaintiff purchased the car from defendants.

Plaintiff called defendant Thomas Singleton (Thomas) as an adverse witness. Thomas testified that he and his wife had owned the car for about three years when plaintiff bought it. He recalled discussing the condition of the car with plaintiff but did not recall if plaintiff asked about specific aspects of the car such as the condition of the brakes. He told plaintiff that the only thing known to be wrong with the car was that it had a noise in the right rear and that a grommet (a connector having to do with a strut) was bad or missing. Thomas acknowledged that he told plaintiff that the car was in good condition.

Plaintiff's testimony regarding his discussions with defendants included the following. Defendants told plaintiff that they drove the car very little and that the car was well maintained. When he was asked if he discussed specific aspects of the car with defendants, plaintiff responded:

"We spoke of the transmission, per se, of the brakes, tires, oil changing, just went through the typical list of issues one would consider in a repurchase negotiation conversation with the seller.

Q. Did either of them express their opinion as to the condition of those mechanical systems?

A. They conveyed the car was in good shape with the exception of the missing grommet. That's a pretty accurate summary statement."

Plaintiff testified that the fact that defendants told him that the car was in good mechanical condition was a primary consideration in his decision to buy the car.

Defendant Cheryl Singleton (Cheryl) also testified at trial. Cheryl took care of all the maintenance on the car during the three years that she and her husband owned it. She had the oil changed every three months. In addition, she had a "stabilizing pin" installed on the front end, had a new battery installed, and had the front tires replaced with new tires. She did not experience any problems with the clutch or the brakes. On cross-examination, Cheryl acknowledged that she and her husband told plaintiff that the car was "in good mechanical condition."

After hearing the evidence, the trial court invited counsel to write informal letters to the court summarizing their clients' positions. The trial court subsequently filed a written memorandum of decision that stated, in relevant part:

"Defendants represented to Plaintiff that the automobile was in 'good mechanical condition', and that they experienced no brake problems.

The question before the Court is whether the representations made constituted an Express Warranty as found in the *Weng* case, or whether the auto was sold 'as is' and representations made were mere 'puffing'.

The court notes that a substantial amount of money was paid for the car, and this is one of the factor[s] which would cause the buyer to reasonably rely on affirmations that the automobile was in good mechanical shape. It makes little sense to pay thousands of dollars, and then expect to immediately sink substantial money into repair.

In this case *immediate* problems were experienced with the brakes and clutch. These were not minor problems, but affected the very drivability of the car, and were directly related to the mechanical condition.

Plaintiff's mechanic and witness, Mr. Hanover, established with reasonable certainty that the clutch and brakes were in bad condition at [the] time of sale.

Applying the rational[e] of the *Weng* case, for the sellers here to represent that the car was in 'good mechanical shape or condition', having experience[d] 'no brake problems', were affirmations of fact that became the basis of the bargain, and which created an Express Warranty.

Having shown that Defendant's [*sic*] are liable for damages due to Breach of Warranty, the paid repair bills are the appropriate measure of damages." (Emphasis in original.)

The trial court entered judgment for plaintiff in the amount of $2,343.03. This was the sum of the amounts shown on the three invoices presented by plaintiff. Defendants' timely appeal followed.

On appeal, defendants contend that the trial court erred when it determined that the statements that they made to plaintiff regarding the condition of the car constituted an express warranty. Defendants argue that their statements were nothing more than expressions of opinion in the nature of puffery that could not properly be deemed an express warranty.

■ Section 2—313 of the Uniform Commercial Code (Code) (810 ILCS 5/2—313 (West 1996)) governs the formation of express warranties by affirmation in the context of a sale of goods such as a used car. Section 2—313 provides, in relevant part:

"(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

\* \* \*

(2) It is not necessary to the creation of an express warranty that

the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." 810 ILCS 5/2—313 (West 1996).

Defendants point to subsection (2) of section 2—313 as support for their argument that their statements to plaintiff did not constitute an express warranty. Defendants also cite the official comments to subsection (2) which state, in relevant part:

"Concerning affirmations of value or a seller's opinion or commendation under subsection (2), the basic question remains the same: What statements of the seller have in the circumstances and in objective judgment become part of the basis of the bargain? As indicated above, all of the statements of the seller do so unless good reason is shown to the contrary. The provisions of subsection (2) are included, however, since common experience discloses that some statements or predictions cannot fairly be viewed as entering into the bargain." 810 ILCS Ann. 5/2—313, Uniform Commercial Code Comment, Comment 8, at 170 (Smith-Hurd 1993).

In defendants' view, their statements to plaintiff cannot fairly be viewed as entering into the bargain. Defendants assert that they are not automobile dealers or mechanics with specialized knowledge of the brake and clutch systems of the car and therefore their statements were merely expressions of a vendor's opinion that did not constitute an express warranty.

Plaintiff responds that the trial court correctly determined that defendants' statements were affirmations of fact that became a basis of the bargain and therefore constituted an express warranty. In support of his position, plaintiff cites *Weng v. Allison*, 287 Ill. App. 3d 535 (1997), the case that the trial court relied on in making its ruling.

Defendants recognize that the trial court specifically relied on *Weng*. However, defendants suggest that *Weng* was incorrectly decided and argue that even if *Weng* was correctly decided it is factually distinguishable from this case and therefore is not controlling.

■ Whether an express warranty exists is a factual issue to be determined by the trier of fact. *Janssen v. Hook*, 1 Ill. App. 3d 318, 321 (1971). Consequently, it is well settled that a reviewing court may not reverse a trial court judgment regarding the existence of an express or implied warranty merely because different conclusions might have been drawn. *Adolphson v. Gardner-Denver Co.*, 196 Ill. App. 3d 396, 401 (1990). Rather, the findings of the trial court will not be disturbed on appeal unless they are against the manifest weight of the evidence. *Adolphson*, 196 Ill. App. 3d at 401.

*Weng* involved the sale of a 10-year-old used car for $800. The car

had 96,000 miles on it. When the buyers attempted to drive the car home, it failed to operate properly. An inspection at an automobile dealership revealed that the car was unsafe to drive and needed repairs costing about $1,500. The seller had told the buyers that the car was " 'mechanically sound,' 'in good condition,' 'a good reliable car,' 'a good car,' and had 'no problems.' " *Weng*, 287 Ill. App. 3d at 536. The trial court ruled that such representations could not become part of the basis of the bargain unless the buyer relied on them and that no one could reasonably rely on such statements with respect to such a car.

In *Weng*, the Appellate Court, Third District, disagreed and reversed the trial court on the ground that its ruling was against the manifest weight of the evidence. The appellate court determined that the representations made by the sellers were affirmations of fact that created an express warranty. The court stated that affirmations of fact made during a bargaining process regarding the sale of goods are presumed to be part of the basis of the bargain unless clear affirmative proof to the contrary is shown; that a showing of reliance on the affirmations by the buyer is not necessary for the creation of an express warranty; and that the seller has the burden to establish by clear affirmative proof that the affirmations did not become part of the basis of the bargain. *Weng*, 287 Ill. App. 3d at 538. The court also stated that the seller may be held accountable for breach of warranty where affirmations are a basis of the bargain and the goods fail to conform to the affirmations. *Weng*, 287 Ill. App. 3d at 537.

■ We recognize that Illinois courts have not always consistently stated these principles. See, *e.g.*, *Coryell v. Lombard Lincoln-Mercury Merkur, Inc.*, 189 Ill. App. 3d 163, 169 (1989) (stating that the buyer must show reliance on the seller's representations in order for an express warranty to exist). However, we believe that the principles set out in *Weng* are correct. We agree with the *Weng* court that, in the context of a used car sale, representations by the seller such as the car is "in good mechanical condition" are presumed to be affirmations of fact that become part of the basis of the bargain. Because they are presumed to be part of the basis of the bargain, such representations constitute express warranties, regardless of the buyer's reliance on them, unless the seller shows by clear affirmative proof that the representations did not become part of the basis of the bargain.

■ In this case, it is undisputed that plaintiff asked defendants about the car's mechanical condition and that defendants responded that the car was in good mechanical condition. Under the foregoing principles, defendants' representations are presumed to be affirmations of fact that became a part of the basis of the bargain. Nothing in

the record indicates that defendants made a clear and affirmative showing that their representations did not become part of the basis of the bargain. Based on this record, we cannot say that the trial court's findings that defendants' representations were affirmations of fact that became a part of the basis of the bargain and created an express warranty were against the manifest weight of the evidence.

Defendants' contention that this case is factually distinguishable from *Weng* does not change our conclusion. Defendants note that this case is different from *Weng* because in that case the car was found not to operate properly when the buyers attempted to drive it home while in this case the defects were not revealed until sometime later. Defendants also note that in *Weng* the repair costs were more than twice the price of the car while in this case the repair costs were only 40% of the price of the car.

We believe these differences are immaterial. Although in this case the defects in the car were not revealed until later than the defects in *Weng* were revealed, the record shows that the defects probably existed at the time of the sale. Moreover, while the costs of the repairs on a percentage basis were less in this case, they were nonetheless substantial.

Defendants cite a number of cases in support of their position that *Weng* is not controlling and that the statements they made to plaintiff did not constitute an express warranty. For example, defendants cite *Redmac, Inc. v. Computerland,* 140 Ill. App. 3d 741 (1986), as authority for the proposition that courts should distinguish sales talk that relates only to the value of the goods and the seller's personal opinion or commendation of the goods, which are considered puffing, from express warranties. We do not disagree with this proposition. However, we note that the *Redmac* court went on to state that there is no bright-line distinction between puffing and express warranties, and the issue is generally a question of fact. *Redmac,* 140 Ill. App. 3d at 743. We have already determined that we cannot say that the trial court's findings were against the manifest weight of the evidence.

Defendants also cite *Weiss v. Rockwell Manufacturing Co.,* 9 Ill. App. 3d 906, 915 (1973), quoting *Keller v. Flynn,* 346 Ill. App. 499, 508, 105 N.E.2d 532 (1952), where the court stated:

> " 'To determine whether or not there is a warranty, the decisive test is whether the vendor assumes to assert a fact of which the buyer is ignorant, or merely states an opinion or judgment on a matter of which the vendor has no special knowledge, and on which the buyer may be expected also to have an opinion and to exercise his judgment. In the former case there is a warranty and in the latter there is not.' "

Again, we do not disagree with this principle. However, we believe that the trial court, as the fact finder in this case, could have reasonably found that defendants asserted a fact of which plaintiff was ignorant when they told plaintiff that the car was in good mechanical condition.

None of the other cases cited by defendant require a different conclusion.

The judgment of the circuit court of Boone County is affirmed.

Affirmed.

GEIGER and HUTCHINSON, JJ., concur.